### AMERICAN WELL WORKS v. F. C. AUSTIN MFG. CO.

(Circuit Court, N. D. Illinois, N. D. January 6, 1900.)

No. 25,292.

PATENTS—INFRINGEMENT—APPARATUS FOR SINKING WELLS.

The Chapman patent, No. 382,689, for an apparatus for sinking wells, which consists of a combination of devices by which an iron pipe, the lower edge of which does the boring, is held by means of a rolling clamp having sharp cutting edges, and rotated at the same time that it sinks

endwise by the force of gravity, was not anticipated by prior devices by which a rotary movement and a longitudinal movement were imparted to an article at the same time, but independently, as in machines for making double-pointed screws and whipstocks, but the adaptation of the principles of such devices to use upon a pipe for drilling wells, often of great length and weight, involved invention. Claims 12 and 13 of such patent also *held* infringed.

This is a suit in equity for infringement of a patent. On motion for preliminary injunction.

Bond, Adams, Pickard & Jackson, for complainant.
Chas. G. Page, for defendant.

KOHLSAAT, District Judge. This cause comes before the court upon an application for a temporary injunction restraining the defendant from making, using, or vending any apparatus for sinking wells containing the improvements or invention secured to complainant under claims 12 and 13 of patent No. 382,689, dated May 15, 1888; said patent being for an "apparatus for sinking wells." It appears from the record that Matthew T. Chapman, being the inventor of said improvements, secured the patent therefor in due form, and afterwards, and by proper assignment, dated March 17, 1893, conveyed the same to complainant; that complainant has made and sold a large number of said well-digging machines, at a great profit; that the same have been upon the market, and generally accepted by the public, for 11 years; that said patent has been litigated, and such litigation has resulted in the upholding of complainant's title thereto, and the validity of said patent, although the contest in said litigation does not appear to have been very thorough; that defendant has applied for a patent upon the device sought herein to be enjoined, and has since May, 1899, been manufacturing and placing the same upon the market. It further appears that complainant's apparatus is made up of several old devices, whereby a round article, as an iron pipe, is made to rotate with the endwise movement of the article, which latter may also be independent of a rotary movement thereof. This result is effectively secured by the use of sharp or cutting edges at the point where the clamp impinges upon the round article grasped thereby. So far as the record discloses, complainant was the first to patent and apply this latter device. It further appears that in the several devices used in the manufacture of double-pointed screws and whipstocks, covered by letters patent numbered, respectively, 145,136 and 313,348, and in other patents introduced, the principle of the endwise movement of the article clamped, independent of the rotary movement which carries said article around, is clearly set out. In complainant's apparatus the said principle is applied to vertical movement effected by force of gravity, and to ponderous articles. It seems to be well settled that it is not invention to so enlarge and strengthen a machine that it will operate on larger materials than before. Walk. Pat. § 30, and cases cited. Nor is it an invention to apply to vertical uses a device which has previously been used in other connections to accomplish horizontal movement. Royer v. Roth, 132 U. S. 201, 10 Sup. Ct. 58, 33 L. Ed. 322. So that if com-

plainant's device had been anticipated in an apparatus which operated horizontally upon some smaller article, the mere change involved in applying same to a larger article in another position would not constitute an invention. It is not invention to use an old thing or process for a new purpose. Walk. Pat. § 38, and cases cited. In the whipstock and double-pointed screw patents, the endwise movement is secured by force. In complainant's device it is secured by gravity. I can see no patentable improvement in this distinction. Complainant has in some manner applied the combined rotary movement to ponderous articles,—pipe weighing many tons,—in sinking deep wells. The rotation of the pipe while it sinks seems to be an essential factor in digging to a great depth, whereby the well can be cased and walled while the adjacent material is kept from binding and thereby retarding the descent of the pipe. But such rotation was not new to the art, although it was formerly secured by crude and unsatisfactory means. It is undisputed that complainant's device is a great success, and has worked a revolution in well digging. While it does not appear from the claims in question that the patent was intended particularly to cover a well-boring machine, yet, from the title of the patent and the specifications, it is evident that that idea was the prominent one in the designer's mind. Is there, then, in complainant's apparatus, that which distinguishes it from the alleged anticipatory patents, other than the manner of its application? As above considered, could the whipstock and screw devices cited be made to apply to a massive well-boring apparatus with no other change than enlargement and change of position? Complainant says, "No," and insists that its rotating clamp, with its sharp angles, supplies a needed improvement to the aforesaid appliances, without which sharp angles or cutting edges the work as practically carried on could not be accomplished. Could a large, round article, weighing many tons, be held firmly or grasped so as to rotate, and at the same time permit an endwise movement thereof, independent of the rotary motion which carries the article around, by mere gripping or hugging? The advantages claimed for the cutting edges are that they hold the article upon which they impinge, firmly, against sidewise movement, while at the same time it is permitted to move endwise, or sink, of its own weight. Could this be accomplished by friction alone? Would not the pressure necessary to hold in position an article many tons in weight (especially considering the strain placed upon the clamping edges by reason of the fact that the lower end of the pipe is engaged in digging and cutting, oftentimes at a very great distance from the clamping edges) crush such article, or prevent necessary endwise or downward progress? I am impressed in this case by the wide divergence between the uses to which the so-called anticipatory devices are put, and the ends to which complainant's patent is applied. It is almost inconceivable that the principles should be identical. In my judgment, the divergence is found in the cutting rollers. It was a bold undertaking to attempt the manipulation of such large and weighty articles as are required in well digging, to the depth of hundreds of feet, and in some cases thousands of feet, by the simple process of a rolling clamp with sharp cutting edges of adjustable

grasp; thus adding to the grasp of the impinging roller edge the resistance of the shoulder or material above the cutting edge of the roller. Chapman did this, and in so doing made a valuable and patentable discovery.

It then remains to determine whether defendant's device infringes claims 12 and 13 of complainant's patent. While complainant uses what it calls "clamping cones," with serrated edges, the defendant uses concaved pulley wheels hung upon swinging arms; the periphery of each side of each wheel being sharpened into a cutting edge. Both are adjustable. Both sustain the article grasped by pressing the sharp angles or cutting edges into and upon the article grasped. Both use substantially the same means to secure the combined rotary action. While defendant secures the endwise movement of the article, independent of its sidewise rotation, in a different manner from that accomplished by complainant's device, it is the same action, and the change is unimportant. It sustains the article grasped by the impingement of the cutting edges, and is, in my judgment, a substantial infringement of complainant's patent. The preliminary injunction is granted.