**Tony ANTHONY, Appellant,**

**v.**

**RANCO INCORPORATED, Appellee.**

**No. 19468.**

United States Court of Appeals
Fifth Circuit.

April 29, 1963.

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

Palmer A. Niles, Coral Gables, Fla., and Andrew B. Beveridge, Washington, D. C. (Padgett, Teasley & Niles, Coral Gables, Fla., of counsel), for appellant.

Allen Kirkpatrick, Washington, D. C. (John W. Malley and Cushman, Darby & Cushman, Washington, D. C., Roy E. Raney, St. Petersburg, Fla., and John N.

510

Tolar, Fort Lauderdale, Fla., on the brief), for appellee.

Before RIVES, CAMERON, and BELL, Circuit Judges.

GRIFFIN B. BELL, Circuit Judge.

Anthony filed suit against Ranco, a valve manufacturer, charging infringement of Claims 1, 2, and 7 of United States Letters Patent No. 2,765,628 issued October 9, 1956. Ranco counterclaimed for declaratory judgment, asserting the invalidity of the claims of the patent in suit because of lack of novelty and invention, and because Anthony was not the first, original and sole inventor. These assertions were buttressed by citations to prior art.

The patent in suit is entitled "Four-Way Changeover Valve." It is said to relate to heating and cooling systems in which four-way valves are employed. More particularly the invention pertains to a reversing valve adapted for use in a reverse cycle system such as an automatic air conditioning unit which may be alternately employed for heating or cooling purposes.

The District Court held each of the claims to be invalid and void, and thus not infringed by Ranco. We measure validity from the standpoint of a combination patent inasmuch as each of the claims in suit is directed to a combination or system.[1]

Claim 1 generally encompasses an air conditioning system consisting of a compressor, a first heat exchanging coil, a second heat exchanging coil, a capillary tube connecting the coils, a blower, means for adapting the system for reverse cycle operation which means is comprised of the four-way changeover valve, together with means connected to the valve so as to automatically operate the system to keep a space such as a room at constant temperature by utilizing it for either heating or cooling purposes.

A basic refrigeration or air conditioning system of the type here involved is composed of these elements and a refrigerant fluid hermetically sealed within the system. The compressor moves the refrigerant through the system so as to extract heat from the coil within the space to be cooled to discharge it through the second coil located outside the space. The system may be reversed to heat rather than cool the space. The purpose of the four-way changeover valve here involved is to facilitate reversal. The system of the combination described is operated automatically to maintain a constant temperature by the use of a solenoid valve thermostatically controlled.

Claim 2 also reads as a combination claim, running to any system adapted for reverse cycle operation, but describing the valve in more detail. This is likewise true as to claim 7 although the valve there is described in even more detail and the system is to include high and low pressure regions and a heat exchange circuit.

█ The issue presented in the District Court was determined on the basis that appellant, in connecting his valve into a reversing refrigeration system, did nothing more than take a system as described in the Stickney patent and replace the mechanically operated reversing valve of Stickney with a four-way slider type pressure operated reversing valve of the type disclosed in the Maha patent; something that would be obvious to any person of ordinary skill in the reversible refrigeration art. It followed therefore, so the contention and determination went, that claims 1, 2, and 7 of the patent in suit were invalid over Stickney in combination with Maha, plus general knowledge in regard to using thermostats to energize or actuate a solenoid for controlling a reversing valve. Deeming the result reached to be correct, we do not reach the issue of infringement.

█ The doctrine enunciated in Lincoln Engineering Company of Illinois v. Stewart-Warner Corporation, 1938, 303

1. Claims 5 and 6 of the patent in suit, not here involved, are directed to the valve only. We, of course, do not rule on the patentability of the valve per se.

U.S. 545, 58 S.Ct. 662, 664, 82 L.Ed. 1008, 1009 cannot be avoided if these claims, as it is agreed, are directed to a combination patent. The combination in that case consisted of a compressor or pump, hose, coupling and a nipple on a bearing to be lubricated. Lubricant was forced under pressure from a container into the bearing. The patentee improved the coupling element. The court held the patent invalid, saying that the invention, if any, was in the improvement of the coupling device alone and not in the combination. The patent was rendered void because it consisted of adding only an improved coupler to old parts or elements having no new function when operated in connection with the coupler. The rule was stated as follows:

> "The mere aggregation of a number of old parts or elements which, in the aggregation, perform or produce no new or different function or operation than that theretofore performed or produced by them, is not patentable invention. And the improvement of one part of an old combination gives no right to claim that improvement in combination with other old parts which perform no new function in the combination."

Appellant is bound by the prior art whether or not he had actual knowledge of it. Mast, Foos & Co. v. Stoner Mfg. Co., 1900, 177 U.S. 485, 20 S.Ct. 708, 44 L.Ed. 856; and Walker on Patents, Deller's Ed. Vol. One, p. 117. And there are two combination patents in the prior art which are particularly pertinent; Stickney and Tipton. Patent No. 1,637,756 was issued in 1927 to C. A. Stickney et al. That patent claimed a method and means for maintaining a predetermined temperature within a space to be heated or cooled. Every element in the combination claims in suit was present in Stickney except there the four-way valve was mechanically operated while the four-way valve of the patent in suit is operated by fluid pressure. Both are thermostatically controlled. The Stickney patent is not cited in the patent in suit as part of the prior art.

Indeed, only one patent, that of Tipton, is cited.

Appellant represented in obtaining his patent that it was an improvement over the valve and system disclosed in Letters Patent No. 2,672,887 issued to V. W. Tipton in 1954. That patent differs, for the purposes here, from the patent in suit only in the construction of the valve. The Tipton system called for a four-way sliding valve which moved in one direction by pressure of the refrigerant, and in the other as a result of spring action. Appellant abandoned the spring and moved the slide, to obtain reversal, in both directions by pressure.

What the patent in suit claims in combination is Stickney with a substituted valve element. It is Tipton with an improved valve element. This fails to rise to the level of invention under the holding of Lincoln Engineering Co. of Illinois, supra. Cf. Great Atlantic and Pacific Tea Company v. Super Market Equipment Corporation, 1950, 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162. There was no new result from the combination. The other elements performed no new or different function in the combination. Such increased efficiency as may have resulted from the substitution of the pressure operated valve for the mechanically operated valve in Stickney, or from the substitution of the improved valve of the patent in suit for that of Tipton does not suffice to constitute invention. See also Hailes v. Van Wormer, 1874, 20 Wall. 353, 87 U.S. 353, 22 L.Ed. 241; and Pickering v. McCullough, 1881, 104 U.S. 310, 318, 26 L.Ed. 749.

The increased efficiency, which may be termed an improved result, came from the valve element. This, however, affords appellant little comfort as we are immediately faced with the prior valve art. Leaving aside the question, not here presented, of whether the valve of the patent was an improvement over the prior art, it is clear that appellant applied a known valve to an analogous use. Such is not invention. Fluor Corporation v. Gulf Interstate Gas Co., 5 Cir., 1958, 259 F.2d 405. The prior art consisted of patents

**512**

issued to Tipton, Cameron, Westinghouse and Maha. These latter three patents are on valves only as distinguished from a system incorporating the valve as was the case with Tipton.

The Maha patent, No. 2,616,449, issued in 1947, rested on the principle taught in patent No. 358,520 issued to Westinghouse in 1887, and patent No. 50,218 issued to Cameron in 1865. The valve principle of Maha, Tipton, Stickney, the patent in suit, and the accused device is the same. Each has four ports; one connected to the low pressure side of a compressor, one to the high pressure side, with the other two being connected, respectively, to the two coils. The changeover from heating to cooling is accomplished by a slide having the form of a piston, within a cylinder or casing of which the ports are a part, moving to close one or the other of the coil ports, thus reversing the flow of the refrigerant. The slide may move to open or close the coil ports in response to a thermostatically controlled solenoid.

The slide in Stickney is actuated mechanically. The slide in Tipton, as stated, is pressure operated in one direction and by spring in the other direction. The slides in Maha, the valve of the patent in suit, and the accused device all operate in both directions from the pressure of the refrigerant in the sealed system.

The Maha patent covers a valve only but teaches that it functions in sealed pressure fluid system, a system clearly analogous to a sealed refrigeration system. In fact, a Maha valve was successfully substituted for the accused valve in a refrigeration system in a courtroom demonstration. It does differ from the valve of the patent in suit in some respects. The Maha valve bleeds through the piston or slide assembly to provide a connection between the pressure region in the center of the valve and the area on either side of the piston assembly. On the other hand, the patent in suit teaches that bleeding is accomplished by the use of a passage in the casing. Also, the valve of the Maha patent is greater in weight and size, and is more expensive to manufacture.

In spite of these and other differences which may amount to improvement over valves of the prior art, in sum all that appellant did was to apply a known value to an analogous use in a known combination or system. This is not invention. Such advance in the art, if advance there was, merely resulted from that type of activity reasonably to be expected of those mechanically skilled in the applicable art. Appellant fits into this category. Cf. Royer v. Roth, 1889, 132 U.S. 201, 10 S.Ct. 58, 33 L.Ed. 322; Lovell Manufacturing Co. v. Cary, 1893, 147 U.S. 623, 13 S.Ct. 472, 37 L.Ed. 307; Blake v. City and County of San Francisco, 1885, 113 U.S. 679, 5 S.Ct. 692, 28 L.Ed. 1070; and Mast, Foos & Co. v. Stover Manufacturing Co., supra. The language of the court in Cuno Engineering Corporation v. Automatic Devices Corporation, 1941, 314 U.S. 84, 62 S.Ct. 37, 41, 86 L.Ed. 58, is apt:

" * * * We cannot conclude that his skill in making this contribution reached the level of inventive genius which the Constitution (Art. 1, § 8) authorizes Congress to reward. * * Ingenuity was required to effect the adaptation, but no more than that to be expected of a mechanic skilled in the art.

"Strict application of that test is necessary lest in the constant demand for new appliances the heavy hand of tribute be laid on each slight technological advance in an art."

No invention appearing in the claimed combination that is the system, the judgment of the District Court declaring the claims of the patent in suit invalid and void must be and is

Affirmed.