## CAMPBELL PRINTING–PRESS & MFG. CO. v. DUPLEX PRINTING– PRESS CO.[1]

(Circuit Court of Appeals, Sixth Circuit. March 15, 1900.)

### No. 616

**1. PATENTS—INVENTION.**

The mere bringing together of elements selected from old machines, to perform the same functions which they severally performed in the machines from which they were taken, and producing the same result, is not invention.

**2. SAME—CONSTRUCTION OF CLAIMS.**

A patentee cannot broaden the claims of his patent to cover ground he yielded to meet objections of the patent office, and which was one of the terms on which he obtained the grant.

**3. SAME—INFRINGEMENT—PRINTING MACHINES.**

The Kidder patent, No. 291,521, for a printing machine, cannot be construed as embodying a pioneer invention; and his double-cylinder construction, in which the two type-beds were shown in a vertical position, and facing each other, cannot be held to cover a press having the type-beds horizontal, one above the other, and both facing upward, as described in the Cox patent, No. 478,503.

**4. SAME.**

The Stonemetz patent, No. 376,053, for a web printing machine, describes a machine which is in no sense a primary invention, in view of the prior art, but at most a bringing together of old elements, with a slight variation in respect to some of them, in which variation rests whatever of novelty there is in the invention; and, as so limited, the patent is not infringed by a press made in accordance with the Cox patent, No. 478,503.

**5. APPEAL—TAXATION OF COSTS.**

In order to lay the foundation for the review by the circuit court of appeals of an order of the circuit court affirming on appeal a taxation of costs by the clerk (if an appeal from such an order will lie), the specific items to which objection is made in the taxation by the clerk should be distinctly pointed out, and the reasons for the objections stated and filed, so as to be shown by the record.

Appeal from the Circuit Court of the United States for the Eastern District of Michigan.

In Equity. The bill in this case was filed by the Campbell Printing-Press & Manufacturing Company, a corporation organized under the laws of the state of New York, to restrain the alleged infringement of certain letters patent by the Duplex Printing-Press Company, a Michigan corporation, and to recover profits and damages for past infringement. The patents on which the suit is founded are two, one of which is No. 291,521, and was granted to the Kidder Press Manufacturing Company, as the assignee of Wellington P. Kidder, on

[1] Rehearing denied.

January 8, 1884. The other is No. 376,053, and was granted to the Stonemetz Printers' Machinery Company, as assignee of John H. Stonemetz, on January 23, 1888. The first of these patents was assigned to the complainant May 31, 1892, and the second was assigned to it June 25, 1892. Both of these patents were for improvements in printing presses. The answer denies that Kidder was the original inventor of the improvements patented to his assignees, and alleges anticipation by various prior patents granted in this country and in England, France, and Germany, enumerated in the answer, and by a number of prior uses in this country, which are specified, and denies infringement. The answer also denies that Stonemetz was the first inventor of the alleged improvements described in the second of the above patents, and alleges that he was anticipated by various prior United States, English, French, and German patents, which are set out, and by several prior uses in this country, the particulars of which are stated. The infringement of this patent is also denied. Kidder filed his application October 30, 1882. He had already taken out a patent (No. 224,440, dated February 10, 1880) for improvements in printing presses. In his application of October 30, 1882, Kidder describes his invention in two aspects,—one, when it is used with two "forms" in a perfecting press, and the second when only one "form" is used. His devices will be best understood by setting out that part of his specification in which he embodies the means with something of the method of operation, and by showing the first sheet of his drawings for illustration. He says: "The paper, H, is fed from a roll (not shown in the drawings), and is slacked off from this roll, as described in my patent No. 224,400, dated February 10, 1880. It passes between clamps, h, h1, attached to the frame of the machine, the moving member, h1, of which is actuated by the cam, h2, and thence over shaft, h3, partially around impression-cylinder, D, thence partially around impression-cylinder, D1, and thence over shafts, h5, and h6, and between the feed-rolls, h7 and h8. The shaft, h3, is mounted upon the carriage, F. On the impression or forward stroke of cylinder, D, the paper is first nipped between cylinder, D, and the form at the line marked 1 in the diagrams, Figs. 1 and 2, and that part of the paper between 1 and 2 receives the impression from form, B, so that at the end of the impression the paper near the line marked 2 is nipped between the form, B, and cylinder, D. Now, all that part of the paper from 1 to 2 would remain flat upon and sticking to form, B, at the end of the impression, were it not for the shaft, h3, and the clamps, h, h1; but, as the paper is held by the clamps, it renders over shaft, h3, as that shaft rises, and is therefore stripped off the form with the least possible resistance from the stick of the ink, and at the end of the impression-stroke the paper between the line held by clamps, h, h1, and the line, 2, is as shown in Fig. 2. The paper from 2 to 3 receives the impression from rorm, B1, and is stripped off from form, B1, by the motion of cylinder, D, over form, B. Fig. 1 is a diagram showing clearly the position of the paper at the beginning of the stroke to make the impression, when two forms are used,—that is, when my press is a perfecting press; and Fig. 2 is a like diagram, but showing the position of the paper after the impression has been taken. It will be clear from these diagrams that the function of shaft, h3, is to prevent the paper from bagging between it and the line where the paper is nipped between cylinder, D, and form, B, and that this function is performed for cylinder, D1, by the cylinder, D. Cylinder, D1, also performs an important duty in aid of cylinder, D; that is, it keeps the paper between 1 and 2 away from the form until the moment before it is nipped between the form and the impression-cylinder. This duty is performed for cylinder, D1, by the shaft, h5. To prevent undue strain upon the paper lying between the line marked 2, where it is nipped by the cylinder, D1, and form, B1, and the line where it is nipped by the feed-rolls, h7, h8, the swinging shaft, h5, is swung inward gradually, thereby slacking the paper as required to relieve it from strain; or shaft, h5, may be mounted in the frame of the machine, and a shaft, h10, be mounted on carriage, F, as shown in Fig. 5; the shaft, h10, then performing the same office for the paper between 2 and 3 that cylinder, D1, performs for the paper between 1 and 2. In the diagrams, Figs. 3 and 4, I have illustrated this, the main feature of my invention, where only one form is used, instead of two forms, as in my perfecting press. In these diagrams the shaft, h3, is a roll, which is pressed against the cylinder, D, during the impression, and

consequently performs the functions, which in the other diagrams are performed by the clamps, h, h1, and the shaft, h3; for, as the surface speed of h3 is just equal to that of the cylinder, D, the paper is clamped, and also guided substantially as before. The shaft, h10, performs the same function in these diagrams, Figs. 3 and 4, for cylinder, D, as cylinder, D1, does in the other diagrams for cylinder, D; for cylinder, D1, may be regarded as omitted from these diagrams, or, what is the same thing, the form, B1, may be regarded as omitted, and therefore cylinder, D1, ceases to be an impression-cylinder, and its only function is to keep the paper between 1 and 2 away from form, B, until the moment cylinder, D, is ready to force it against form, B."

The inking-rollers are not shown; they being of a common form, and used in an ordinary way. In using this machine, the web of paper is first drawn through the press over the type-bed by the feed-rolls, which are near the delivery of the printed sheet, the length of the form on which the printing is to be done, plus the margin of the intended sheet; and thereupon the clamps, h and h1, are closed, "or," as he says, "the paper is held in any other suitable way," and thus the web is held taut between the feed rolls and the clamps, while the impression-cylinder, accompanied by guiding rollers to hold the web off

the type-bed, and the inking-rollers, are rolled over the web, impressing it upon the type. After passing over the form or type-bed, the cylinders are thrown back from the plane of the type by a device actuated by a cam, which brings the cylinders nearer together, and taken back by the movement of the carriage in which they are journaled to their original starting point. While this last operation is taking place, the clamps are opened, the feed rollers are put in motion, and the web is drawn through and over the types as before, the cylinders move to the plane of the type, the process is repeated, and thus the printing goes on. The mechanism by which the devices are operated is left to the contrivance and adjustment of the skill of the mechanic.

The main feature of Kidder's patent consists, as he tells us, in his manner of presenting the web for printing upon it. He refers to a former patent, granted to Royal Cummings in 1868, and disclaims what is shown by that; adding, "My mode of presenting the web differing radically from his, in that in his mode the feed is simultaneous with the printing, while in my mode the feed takes place while the impression is thrown off." The complainant relies upon claims 1, 2, and 7 of this patent. They are as follows: "What I claim as my invention is: (1) In combination with a stationary bed and an impression-cylinder traveling over it, guides for the web, one at each side of the impression-cylinder, and a feeding device, which feeds the proper length of web while the impression is thrown off, all substantially as described. (2) In combination, two stationary beds, two traveling impression-cylinders, and a feeding mechanism, substantially as described, combined together and with suitable guides, substantially as described, and operating to print both sides of a web, as set forth. (7) The web perfecting press, above described, consisting of the two stationary beds, the two traversing impression-cylinders, the two sets of inking apparatus, the web-guiding mechanism, substantially as described, and the intermittently-operating web-feeding mechanism, substantially as described, all operating together substantially as described."

The Stonemetz patent was applied for July 30, 1886, and relates to web printing machines; that is, to presses which print upon a continuous sheet, which is cut as it is delivered out, as distinguished from those which print upon sheets which are separated before they are fed in. It consisted of stationary type-beds located upon the same horizontal plane, a traveling carriage conveying impression-cylinders and inking-rollers and web-guiding rollers back and forth over the types, a vertically moving roller for taking up the slack of the web as it is unwound from the web-roll, and a vertically moving roller for drawing the web after the printing is done. The construction of his machine is indicated by his description of its operation, which is as follows: "In operation the web-roll is placed in the supports, T, T$^1$. The web is then drawn over the roller, M$^2$, and under the roller, V$^3$, and from thence over the roller, L$^1$, from whence it is carried over the top of the machine to and over the roller, b$^3$, and then under the impression-cylinder, E$^1$, and up over the roller, b$^2$, and from this roller over the top of the machine to and around the adjustable roller, L, and back to and over the roller, b, and under the impression-cylinder, E, and over the roller, b$^1$, and from thence to and over the roller, M, around under the roller, W$^3$, and back up over the roller, M$^1$, from whence it passes to and between the cutting-cylinders, S, S$^1$, where it is cut into sheets. It is obvious that this arrangement of the web, Y, presents one of its sides to the type-bed, B$^1$, operated upon by the impression-cylinder, E$^1$, and the other side to the type-bed, B, operated upon by the impression-cylinder, E, so that when forms of type are placed upon the beds, B and B$^1$, one side of a newspaper will be printed upon the web, Y, by the impression-cylinder, E$^1$, and the other side of the newspaper will be printed upon the other side of the web, Y, at another point, by the impression-cylinder, E, both by the same movement of the cylinder-carriage, I, two sides of the newspaper being printed as the carriage, I, travels over the beds forward, and a like amount as the carriage, I, travels back (the web having been meanwhile moved ahead the length of the printed sheet by the oscillating roller, W$^3$); the adjustment being such that the opposite side of each paper printed by the form on the bed, B$^1$, is in turn presented to and printed by the form on the bed, B, in its passage through the machine. In this manner a web of paper can be printed on both sides as it passes through the machine."

The diagram to which these references are made is here shown:

It needs further to be stated that his roller, $V^3$, which takes up the slack of the web after it is drawn from the web, is pivoted upon the frame of the carriage, and is actuated by gravity. When the web is drawn through the press, the loop of the web in which it hangs is taken up. When that operation is

suspended, the roller falls; thus renewing the loop and thereby storing a fresh part of the web, which is to be taken into the press by the next draught of the feeding rollers, at the other end of the machine. The roller, $W^3$, rests in a loop of the web. It is raised and the loop taken up by the draught of the feeding rollers, and is then moved down by a cam operating upon the arm upon which the roller is suspended, thereby drawing the printed web towards its delivery, where it is cut into sheets. When the roller, $W^3$, is pressed down, the roller, $V^3$, is lifted, and the web is fed upon the forms. When $W^3$ reaches the bottom of the loop, the printing takes place; the web being held by the pull of the roller, $W^3$, at one end, and of roller, $V^3$, at the other end. This seems to be the only means of holding the web stationary over the type-beds while the impression-cylinders are moving over it. The feeding of the web over the type-beds takes place while the cylinders are passed beyond the type-beds, and so out of contact with them. The result of these operations is that the web is fed intermittently between $V^3$ and $W^3$, and continuously between the web roll and $V^3$, and between $W^3$ and the delivery-rolls, or approximately so. The adjustment for actuating the machinery adapted to the purpose is implied.

The claims which are alleged to be infringed are the fifth, seventh, tenth, twelfth, and seventeenth, as follows: "(5) In a printing machine, the combination of two stationary type-beds located on the same horizontal plane, and a traveling carriage carrying an impression-cylinder and inking-rollers for each of said beds, operating on said beds in their forward and backward movements, with means, substantially as described, for moving said carriage back and forth over said beds, and rollers adapted to convey a web of paper through said machine, whereby one side of the web may be printed on forms placed on one of said beds, and the other side of the web on forms placed on the other of said beds, substantially as and for the purpose set forth." "(7) The combination, in a printing machine, of stationary type-beds secured to the frame of the machine, and a traveling carriage carrying impression-cylinders and inking-rollers and web-carrying rollers thereon, a vertically-moving roller for taking up the slack of the web as it is unwound from the web-roll, and a vertically-moving roller for drawing the web forward, substantially as and for the purpose set forth." "(10) In a printing machine, the combination, with stationary type-beds located on substantially the same horizontal plane on the frame of the machine, and traveling impression-cylinders and inking-rollers adapted to travel back and forth over said type-beds and take impressions both ways, of web-carrying rollers on the frame of the machine, web-carrying rollers connected with the traveling impression-cylinder carriage, and means, substantially as shown and described, for taking up the slack of the web as it runs off of the web-roll while the impression-cylinders are passing over the type-beds, and means, substantially as shown and described, for drawing the web forward when the impression-cylinders are off of the type-forms, substantially as and for the purpose set forth." "(12) The combination, in a printing machine, of the side frames, A, $A^1$, the stationary type-beds, B, $B^1$, with the traveling cylinder-carriage, I, carrying the impression-cylinders, E, E, which operate both forward and backward on said type-beds, substantially as and for the purpose set forth." "(17) The combination, in a printing machine, of the web-supporting rollers, M, $M^1$, and the vertically-moving roller, $W^3$, supported upon the arm, $W^1$, $W^2$, with the cutting-cylinders, S, $S^1$, substantially as and for the purpose set forth."

The defendant is engaged in building printing presses constructed upon the specifications of patent No. 478,503, granted July 5, 1892, to Joseph L. Cox, who had also received several former patents relating to the construction of printing presses, some of which will be hereafter referred to, and many of the devices of which are embodied in 478,503. Patent No. 478,503 was for an improvement in web printing presses, whereby the printing is effected on a continuous web, either upon a single bed, or upon two, in which latter case it was a perfecting press. It consisted, in the latter form, of two type-beds arranged one above the other, the types facing upward on both beds, revolving impression-cylinders mounted in reciprocating bearings, whereby the cylinders are moved back and forth over the beds, each movement producing a fresh impression. It involved, also, for carrying the web through the press, a mechanism by which the web was stopped over the beds while the printing was done,

and then drawn forward for the next impression, while the cylinders were out of contact with the beds. This intermittent movement of the web was produced by looping-rollers, one on each side of the printing apparatus, operating alternately. The following diagram will illustrate the composition of this press:

In this press the looping-rollers, l, l, are both positively actuated by the machinery.

In the circuit court it was held that neither of the complainant's patents was infringed, and the bill was dismissed. The complainant brings the case here on appeal.

Louis W. Southgate, for appellant.

Alexander & Dowell (Dallas Boudeman and Arthur E. Dowell, of counsel), for appellee.

Before TAFT and LURTON, Circuit Judges, and SEVERENS, District Judge.

SEVERENS, District Judge, having stated the foregoing facts, delivered the opinion of the court.

This case was brought here on a former appeal by the defendant from an order of the circuit court granting a preliminary injunction. Our opinion affirming that order is reported in 16 C. C. A. 220, 69 Fed. 250. We there held that in view of the fact that in a former litigation between this complainant and a vendee of the defendant, in the circuit court for the district of Massachusetts, a decree had been awarded in favor of the complainant upon a somewhat similar record, proper regard for that decision and the obligations of comity arising therefrom required that the preliminary injunction should issue as prayed; taking care, however, to state that our action then taken was not to be construed as a determination of the issues, either for the circuit court or this court, upon final hearing of the issues of law and fact. It now becomes our duty to re-examine the case upon its merits, and in doing this we are not constrained by the reasons which guided our former action.

The printing presses involved in the present suit are recent illustrations of an art which had its beginning with the invention of printing upon beds of movable type more than 400 years ago. The art being one of great and constant interest to the public, the inventive faculties of great numbers of ingenious men have been exercised in developing it, and bringing it to the almost marvelous state of perfection in which it now exists. For a long time presses were built upon the plan of making the printing impression by feeding the paper in sheets over the face of the type-bed, and thereupon causing pressure upon it of a flat plate of the same area as the type-beds. About 100 years ago the use of revolving cylinders was adopted; the type being transferred to the surface of the cylinder, and the impression produced by rolling them over the paper laid upon a flat bed. Later, about the year 1820, English inventors brought out forms of presses in which the types were set in beds or "forms," as in the old platen presses; the paper was fed over the type-beds, and the impression was made by revolving cylinders moving both forward and backward over the paper, pressing it against the face of the type. Some of these presses printed on both the forward and backward stroke. The first of these English patents, which is shown in this record, was issued in 1820 to Winch. But, as this was soon improved upon by another, we shall not stop to notice its details. The English patent, No. 4,690, issued to Bold in 1822, was for a printing press having stationary type-beds located on the same horizontal plane, a carriage traveling back and forth carrying impression-rollers over the type-beds, and printing at each forward

and 'backward motion, inking-rollers and guiding-rollers placed on each side of the cylinders for the purpose of holding the paper off the type, except at the moving point of contact on the instant of impression. With the foregoing description, the diagram here shown, and which accompanied the same, is easily understood:

Bold's Press of 1822.

A press of similar construction was patented to Smith in 1835 (English patent No. 6,793), except that this was automatic, and one of its forms contained a device for lowering the type-bed during the backward stroke of the cylinder, and while the paper was being fed in.

Prior to 1850, so far as the proof shows (except by a somewhat crude patent to Senefelder in 1801), the paper on which printing was done was fed in by hand in sheets. But in 1853 one Montague was granted a patent in this country (No. 9,993) for a web-fed press. In this press the web of paper was suspended in the frame upon a roll from which it was drawn through the press by feeding-rollers. It was provided, also, with a stationary cylinder with guiding-rollers to hold the web away from the type-bed except on the line of impression, inking-rollers, and a traveling type-bed; also, a looping-roller between the cylinder and the outward delivery-rolls to produce an intermittent movement of the web, feeding it in proper lengths while the impression was thrown off. This latter feature will be noticed hereafter in dealing with the Stonemetz patent.

In 1854 an English patent (No. 886) was issued to Tannahill for an automatic press printing a web of paper upon stationary type-beds by locomotive impression-cylinders, guiding-rollers in front of and behind the cylinders being dispensed with, the web-roller and the feeding-rollers, by reason of their location, performing the function of holding the web off the type except at the line of impression. It showed, also, feed and inking rollers, and means for taking in the unprinted web while the impression of the cylinders was off. In one of the forms of his invention, Tannahill drops the type-bed while the cylinder is making its reverse movement and the web is fed in. In another the type-bed remains stationary, and the cylinder is raised at the end of the printing movement, and is sustained during the reverse movement out of contact with the type, and while the web is being fed in. And he detains the web while the printing is being done by "tension put upon it."

In 1868 Royal Cummings obtained a patent (No. 83,471) for a web-fed platen press. This was a perfecting press; that is, one producing printing on both sides of the paper, with stationary cylinders and movable type-beds. It showed, also, guiding-rollers and inking-rollers, and means for feeding in the web at the proper time, all of which had for some time been well known in the art. Other

patents are exhibited in the record prior to Kidder's invention, involving the forms and operations of printing presses, which, with those already recited, showed substantially all the elements of the Kidder press. We say substantially, because there are one or two variations in the relation of parts by Kidder which will be referred to later on. Proper regard to the limitation of the space to be occupied in an opinion forbids our giving a detailed analysis of all such former patents. It is sufficient to say that they exhibited stationary type-beds (one or more), traveling impression-cylinders, stationary impression-cylinders, inking-rollers, traveling type-beds, guides for the web on each side of the cylinders, and feeding-rolls and devices for bringing the web between the types and the cylinders while the impression was thrown off, and means for holding the web stationary while the impression was being taken. Some were perfecting presses. Some printed on both the forward and backward movements of the cylinders. Others printed only with one movement. Kidder found all these things in the prior art. He varied the position of his double-cylinder press by making it vertical, bringing the type-beds face to face, and so locating his cylinders with reference to each other that they would subserve the purposes of guiding-rollers, each to the other; and he located a rigid clamp in front of the type-beds to grasp the unprinted web while the printing was done. In his single-cylinder horizontal press, he moved one of his guiding-rollers close to the cylinder, so that it should bind the paper upon it, and the contact thus produced should operate as a detent of the paper while the printing was being done. Assuming that such variations made his combinations patentable, it is clear that the defendant's press is no infringement of them. Cox, too, in his construction took his material from the prior art, and used nothing which was peculiar to Kidder. Neither of them can claim anything new beyond the specific forms of the elements combined by them. Their presses bear less resemblance to each other than the Cox press does to the older forms. Unfounded pretensions are made for the Kidder patent. In view of all that had been done before, it is useless to claim for him that he was a pioneer, and it would be necessary to establish such a claim in order to render it possible to give his patent so broad a scope as to include means varying thus widely from his own. In Kidder's double-cylinder construction he describes it as vertical, the two type-beds facing each other. The court below thought that he should be held to the vertical position described by him, and that his patent would not cover the same construction laid horizontally. We are not satisfied that this would be so upon the reason given by the learned judge, but for another reason we think his conclusion would follow, that there is no infringement. Kidder's press could not be constructed with type-beds one above the other, and having both type-beds facing upward as in the defendant's, without such an entire reconstruction of his press as would eliminate its peculiarities in the manner of "presenting the web," upon which he lays so much stress, and which he says is the main feature of his invention. In this manner of presenting the web, as before pointed out, the cylinders perform an important

function, relatively to each other, as guides for the web. And, in his horizontal single press, the friction upon the web, whereby it is held taut, produced by bringing the guide against the cylinder, with the web between, and which he says is an illustration of the substance of his invention, has no similitude in the defendant's press. Again, there is a wide dissimilarity between the clamp in front of the web-roll on the Kidder press, which closes and holds rigidly the paper while the cylinder is making the impression, and the defendant's looping-roller, which does not rigidly hold the paper, but holds it sufficiently taut for the printing, while it also feeds from the roll the requisite length of web for the next impression. We are satisfied that our view of the scope of his invention was that taken at the patent office; for it rejected his original broad claims by references to former patents, one of which was the Cummings patent, already referred to. The latter Kidder thereupon distinguished from his own by saying that it differed radically therefrom, in that in Cummings' patent the feed was simultaneous with the printing, while in his the feed took place while the impression was thrown off. Inasmuch as nearly all web printing presses, which had been patented, fed the paper while the impression was thrown off, the acquiescence of the patent office can be construed to mean only that Kidder's patent was allowed for its special means of feeding the web while the impression was thrown off, as disclosed by him. The circuit court for the district of Massachusetts, and counsel in their briefs in the present case, refer to the movement in the Kidder press as that of a cylinder "traveling in the moving fold of the web," as if it were a peculiarity. But it means no more than that the cylinder travels in a loop of the web which is made by the depression of the cylinder between the guiding-rollers,—a feature which was present in nearly, if not quite, all cylinder presses since they were first brought into use many years ago. In the Kidder patent a larger surface of the cylinder is in contact with the web than in former constructions, but this is a matter of degree only. Besides, the defendant's press is in this particular the same as that of presses long antecedent to both the Kidder and the defendant's presses. For the reasons stated, we conclude that there was no error in holding that the defendant did not infringe the Kidder patent. We have therefore not found it necessary to consider the prior use by Cox of the matter of Kidder's invention, upon which the defendant relied as one of the grounds of its defense.

The application for the Stonemetz patent was filed July 30, 1886. The patent was issued January 3, 1888, and was for improvements in web printing machines. The press which he describes as containing his improvements involved the combination of two stationary type-beds, located on the same horizontal plane, a traveling carriage, conveying impression-cylinders with inking-rollers moving backward and forward over the beds, and guiding-rollers and rollers to turn the face of the web in opposite directions while the printing was being done. It also contained feeding-rollers to draw the web through the press, and a vertically-moving roller for taking up the slack of the web as it was unwound from the roll, and another

vertically-moving roller between the feeding-rollers and the printing parts to draw the web forward intermittently while the impression was off. This last feature (that of the looping-rollers to take up the slack and draw forward the web) is one much relied upon by the complainant. A description of this press, and a statement of the claims alleged to have been infringed, appear in the statement preceding this opinion.

Between the application for the Kidder patent and that of the Stonemetz, other inventions of improvements in printing presses became the subject of patents. We shall take space to describe only a few of them. In 1884 a patent (No. 305,469) was issued to J. G. Northrup, showing a perfecting press, wherein the type-beds travel under stationary cylinders, but the web is taken from one impression to the other in much the same way as the Stonemetz patent, though it must be conceded that there was nothing new of much substance in this respect, beyond what had long before been accomplished. The beds were on the same horizontal plane, end to end, as in the Stonemetz patent. We may at this point observe that, in our opinion, there was no invention in constructing a press with traveling cylinders over stationary type-beds, instead of stationary cylinders and traveling type-beds, if no other difference existed in the operation of the machine. The art was long ago full of both forms, and they may be regarded as substitutes, one for the other, so far as this feature is concerned.

In 1883 an English patent (No. 2,161) to Lake was issued, which involved all the features of the web-feeding devices of the Stonemetz patent. It was a platen press, but the mode of feeding was the same; and it did not require any invention to bring in the cylinders, instead of the plate, to make the impression, with the well-known incidental apparatus required for the change. This patent is illustrated in the following diagram:

Lake's Patent, 1883,

From the web-roll, B, the web is slacked off by the rolls, L, carried under the vertical looping-roller, $J^2$; thence over the guiding-rollers before and behind the type-bed, located high enough to carry the paper clear of the type while the impression was off; thence under the vertical looping-roller, $J^1$; thence through the feeding-rollers to the delivery. The looping-rollers, $J^2$, and $J^1$, were positively actuated by the web through the arms pivoted on the ends of the reciprocating lever, $L^1$, the pressure on the outer end of which was reinforced by a spring, $L^3$, to impel the roller, $J^1$, in forming the loop between the type-bed and the delivery rolls. The only material difference between the looping-rollers of the Lake patent and that of the Stonemetz was that both of them were positively actuated in Lake's, while in that of Stonemetz the roller in front of the web-roll floated in the loop, being actuated only by gravity, and the other near the feeding-rolls was actuated by a cam in the downward movement in forming the loop. In the defendant's press the looping-rollers are both positively actuated, and in this respect bear a much nearer resemblance to the Lake than they do to the Stonemetz patent.

In 1885 the defendant built, and put into use in the printing room of the Grand Rapids Democrat, a press designed by Cox, which has been in use ever since, composed of a pair of cylinders over traveling type-beds, located one above the other, and printing on both the forward and backward movements upon a web of paper fed automatically through the machine. It did not, as we understand, employ the looping-rollers, alternately supplying and delivering the web to and from the press, but these elements were supplied, as we have seen, by the Lake patent; and there was no invention, any more than there was in the Stonemetz patent, in bringing into the Cox machine old elements, known to the art, to perform the same duty they did in an earlier structure in the same art. It is, moreover, not to be lost sight of that Montague's patent, which was referred to in connection with the Kidder patent, showed a looping-roller for precisely the same purpose between the feeding-rollers and the type-bed. It did not have one between the web-roll and the type-bed, but, if there was need of it, it did not require invention to duplicate it in another place to perform the same function. Nor was it new, for, as we have stated, it was shown in the Lake patent, above mentioned. The mere bringing together of elements selected from old machines, to perform the same functions which they severally performed in the machines from which they were taken, and producing the same result, is not invention. Hailes v. Van Wormer, 20 Wall. 350, 22 L. Ed. 241; Royer v. Roth, 132 U. S. 201, 10 Sup. Ct. 68, 33 L. Ed. 322; Union Edge Setter Co. v. Keith, 139 U. S. 530, 11 Sup. Ct. 621, 35 L. Ed. 261; Wright v. Yuengling, 155 U. S. 43, 15 Sup. Ct. 1, 39 L. Ed. 64.

From these considerations, it is manifest that, if the Stonemetz patent can be sustained at all, it must be limited to the specific elements described in his combinations. It is impossible that it should be so broadened as to cover all means for accomplishing the same results which others had already accomplished, or might thereafter accomplish. His was in no sense a primary invention, but, at most,

a bringing together of old elements, with a slight variation in respect to some of them; and upon this variation rests whatever of novelty there is in his invention. This also accords with what transpired in the patent office upon his application. He originally made claims for a somewhat generic invention. His seventh claim at first was of that character, and is given as an illustration:

"(7) In a printing machine, the combination of stationary type-beds with a traveling impression-cylinder carriage carrying impression-cylinders and inking-rollers, mechanism for operating said carriage, and means for conveying a web of paper between said impression-cylinders, and type forms, placed on said stationary beds, substantially as and for the purpose set forth."

Such claims were rejected upon references showing the state of the art substantially as we have here shown it. Thereupon his attorney addressed to the office the following letter:

"Sir: In presenting the inclosed amendment in case of John H. Stonemetz's application for improvement in web printing presses, filed July 30, 1886, serial No. 209,575, applicant desires to call the attention of the examiner to the fact that the impression-cylinders operate in contact with the type on the type-beds both in their forward and backward movements, and also to the fact that the type-beds are located on substantially the same horizontal plane, end to end. In this construction applicant is enabled to operate his press without lifting the type off their feet, as the upright Kidder press does, and he is enabled to print double the number of impressions that Kidder's press will do at the same speed, as Kidder's cylinders operate on the type-beds only one way, while applicant's operate both ways. I have endeavored to so amend applicant's claims as to limit him to his construction, and trust that they will prove satisfactory."

Upon this and some further limitation the patent was allowed. The patentee cannot now expand his claims to cover the ground he yielded in order to obtain the patent. What he conceded was accepted as one of the terms of the grant. Roemer v. Peddie, 132 U. S. 313, 10 Sup. Ct. 98, 33 L. Ed. 382; Royer v. Coupe, 146 U. S. 524, 13 Sup. Ct. 166, 36 L. Ed. 1073; Thomas v. Rocker-Spring Co., 47 U. S. App. 125, 23 C. C. A. 211, 77 Fed. 420,—a case decided by this court. Neither the Kidder nor the Stonemetz patent is fortified by any inference of the novelty or utility of their inventions arising from general adoption and use. The first was granted in 1884, and the latter in 1888. This suit was commenced in 1895. In the interval only two of the Kidder presses were put into use. These were both installed in a single establishment, in Lockport, N. Y. The Stonemetz patent did not go into use at all. These facts would not of themselves establish that the inventions were not novel and useful, but such circumstances, unexplained, give additional ground for the belief that no very substantial improvement of the art was made. The explanation which is offered is not satisfactory. It is said the corporations organized for utilizing these patents were of limited capacity, but they were assumed to be sufficient for the purpose, and nothing appears to show that the patents were of a character to commend them to public favor. We have not found it necessary to deal with their respective claims, one by one, but have given to each all that could be claimed upon the descriptions therein of the inventions under the restrictions imposed by the state of the art and the limitations of the patent office.

Errors are assigned upon taxation of costs, a part of which, only, are referred to in the brief for the appellant. It appears that the costs were taxed by the clerk, in the ordinary manner, upon the bill of costs tendered, and affidavits. It also appears, inferentially, that the complainant appealed from the clerk's taxation to the court, where the taxation by the clerk was affirmed. The proper practice in order to lay the foundation for an appeal to this court (if, indeed, an appeal will lie on a mere matter of taxing costs, as distinguished from an adjudication for costs between the parties) was not observed in the court below. In order to bring the specific items to which the objection was intended to be made either on retaxation before the clerk, or before the court on appeal from the clerk, they should have been distinctly pointed out and the reasons for the objections duly filed. 2 Daniell, Ch. Prac. 1449, 1450. In the absence of any such specification of the objections or grounds relied upon, the court did not err in affirming the taxation of the clerk. However, it is proper to say that we have looked into the matters complained of, and do not see that any substantial injustice was done to the appellant. We think the court below did not err in its conclusion that no infringement of either patent is shown. Its decree is accordingly affirmed.