In re MICHIGAN CENT. R. CO.

(Circuit Court of Appeals, Sixth Circuit. July 20, 1903.)

No. 1,171.

1. APPEAL—PARTY ENTITLED TO APPEAL—INTERVENER.

   One who was permitted to intervene in a railroad foreclosure suit to assert certain rights in respect to the proceeds of the property after its sale, in whose favor certain orders were entered, and against whom, 20 years later, a decree was entered for a sum of money as costs, had become by reason of such proceedings a party to the suit, and entitled to appeal from the decree against him if otherwise appealable.

2. SAME—APPEALABLE DECREE—FINALITY.

   A decree against a party to a proceeding for costs to be paid to the clerk for services rendered, and awarding execution therefor, is final in such sense as to be appealable.

3. SAME—DECREE AWARDING FEES TO CLERK.

   A decree of a Circuit Court against a litigant, allowing costs to the clerk as a matter of positive law, under a statutory provision, is not one made in the exercise of the court's discretion, as in the allowance of costs as between the parties, and is appealable.

¶ 2. Finality of judgments and decrees for purpose of review, see notes to Central Trust Co. v. Madden, 17 C. C. A. 238; Prescott & A. C. Ry. Co. v. Atchison, T. & S. F. R. Co., 28 C. C. A. 482.

¶ 3. See Appeal and Error, vol. 2, Cent. Dig. § 823.

· **4. SAME.**

Such a decree is also appealable, although not based upon the statute, but in the nature of a quantum meruit allowance for extraordinary services rendered under an order of court, for which no fee is provided; the discretion of the court in making such allowances being subject to review by appeal.

### Petition for Writ of Mandamus.

This is an application for a mandamus to the Circuit Court of the United States for the Eastern District of Michigan, to compel the allowance of an appeal from its decree. The facts necessary to be stated are as follows:

In 1881 the Farmers' Loan & Trust Company, as trustee under a mortgage made to secure bonds issued by the Detroit & Bay City Railway Company, obtained a decree for the sale of the mortgaged railroad for the satisfaction of the bonds so secured. One Addison Mandell was appointed master to sell, and he did sell, the said railroad, and, by direction of the court, paid the proceeds of sale to the complainant, the Farmers' Loan & Trust Company, to be paid by it in payment and satisfaction of the bonds. The road was purchased for the Michigan Central Railroad Company, though that fact does not seem to have appeared on the record of the foreclosure proceedings. Certain of the bonds so secured did not mature until 1902 and 1903, and were guarantied, both as to principal and interest, by the Michigan Central Railroad Company. Holders of such bonds to the amount of $424,000 refused to surrender their bonds to the said trust company for payment, preferring to hold onto the investment. In 1882 the said Michigan Central Railroad Company filed in the foreclosure case, the title of which was "The Farmers Loan & Trust Company et al., Trustees, v. The Detroit & Bay City Railway Company," an intervening petition setting forth the situation in respect of the bonds which the holders refused to surrender for payment, and praying that the Farmers' Loan & Trust Company might be ordered to pay to it the sum of $424,000, so held by it for the ultimate redemption of the bonds maturing in 1902 and 1903, and offering to secure same. An order to show cause was made, and the trust company appeared and demurred. The demurrer was overruled, and an order made that the said trust company repay to the said master, Addison Mandell, the said sum of $424,000, and take his receipt for same. Payment was accordingly made, and deposited to the credit of the court in the National Bank of Commerce in New York, a designated depository of the United States in New York City, which was directed to hold same subject to the further order of the court. The master accordingly took a certificate of deposit, and reported his action accordingly. Thereupon the Michigan Central Railroad Company filed a supplemental petition setting out the above facts, and praying that said money be paid over to it upon its giving security to repay same to the said master or into the registry of the court when so ordered. Thereupon an order was made directing the master to pay to said railroad the said sum upon the execution of a satisfactory bond in the sum of $800,000, conditioned "to pay to the holders of said 424 Detroit & Bay City Railway Company bonds the interest thereon as it becomes due, and the principal thereof at its maturity, when and where by the terms thereof the same shall become due and payable, or to repay the said sum of $424,000, or any part thereof which the said court may direct, into the registry of said court at any time the said court may order or direct, and shall also deliver to the said master in chancery, in pledge for collateral security to the said bond, the amount of $424,000 in registered bonds executed by the said company of a series of bonds, * * * and that the last-described bonds be registered in the name of the clerk of the Circuit Court of the United States for the Eastern District of Michigan, transferable only upon the order of the court, and that said $800,000 bond and said last-described bonds be deposited in a safe of the Trust, Security & Safe Deposit Company of Detroit, Michigan, under the control of, and only to be opened upon the order of, this court, and that the use of said safe be furnished at the expense of said Michigan Central Railroad Company." In accordance with this order a bond conditioned as provided, and running to W. D. Harsha and his successor as clerk, etc., was made; and the collateral bonds were

also duly registered in the name of said clerk, and the original and collateral bonds then delivered to said Addison Mandell, and were deposited in said safe, as required by the order, and the key delivered to the said clerk. In 1892 the Michigan Central Railroad Company paid off 266 bonds which matured in that year, as it was required to do, and then filed its petition, showing such payment, and exhibiting the canceled bonds, and prayed that its own bonds, held as collateral, to the amount of $266,000, be released and delivered to it, which, upon order of the court, was done.

Thereupon W. D. Harsha, the clerk of said court, mentioned above, filed his petition, entitled as of the original foreclosure case, reciting the above facts, and, among other things, stating (1) that he is the clerk of said court, and has been continuously since January 6, 1882; (2) that since December 11, 1882, the said $800,000 bond and the said $424,000 Michigan Central Railroad Company bonds collateral thereto were continuously in the care, custody, and control of petitioner as clerk; (3) that by order of the court he had opened the safe deposit box, and, after proper identification of the 266 bonds presented by the railroad company, he had "assigned and delivered to the said Michigan Central Railroad Company $266,000 of the registered bonds deposited December 11, 1882," and had reported his action to the court.

The said petitioner then concluded as follows:

"That your petitioner claims compensation for the receiving, keeping, and paying out of the $424,000 aforesaid paid back to the master, Addison Mandell, by the Farmers' Loan & Trust Company, and subsequently deposited in a designated United States depositary subject to the order of the court, which was subsequently withdrawn from the court and paid to the Michigan Central Railroad Company as above set forth; that he claims compensation, also, for other special services as clerk in identifying, canceling, transferring, and assigning said bonds, and for clerk's fees, as follows:

| | |
|---|---:|
| One (1) per cent. on $266,000 | $2,660 00 |
| For special services in examining, identifying, checking, canceling, and assigning bonds | 50 00 |
| For other services as clerk above referred to, for filing papers and entering orders | 85 |
| | $2,710 85 |

"That your petitioner is chargeable as clerk with the above-mentioned fees, and is accountable for the same to the United States.

"Therefore, your petitioner prays that the Michigan Central Railroad Company be directed to show cause on Monday, November 3, 1902, why it should not forthwith pay to your petitioner the sum of $2,710.85 for services as above set forth, together with costs of this proceeding."

The Michigan Central Railroad Company appeared and demurred to so much of the petition as related to the claim for $2,660 for 1 per cent. commission upon $266,000, the items of $50 and 85 cents, respectively, being admitted. This demurrer was overruled, and an order in these words entered:

"The Farmers Loan & Trust Company, James H. Blake, and Charles Merriam v. The Detroit & Bay City Railway Co.

'In the Matter of the Petition of W. S. Harsha, Clerk, etc.

"Upon the petition of Walter S. Harsha, Clerk, for compensation from the Michigan Central Railroad Company. Walter S. Harsha, the clerk of this court, having heretofore filed his petition for compensation from the Michigan Central Railroad Company, and the said Michigan Central Railroad Company having filed its demurrer to said petition on the 24th inst., and the matter having been argued and submitted, after mature deliberation thereon said demurrer is by the court now here overruled; and it is ordered, adjudged, and decreed that the said petitioner do recover against the said Michigan Central Railroad Company for the services mentioned in said petition the full sum of two thousand seven hundred ten and $85/100$ ($2,710.85) dollars, as prayed, and that said petitioner have execution therefor."

A petition praying for an appeal was thereupon filed by the said railroad company. Upon this the following indorsement was made: "The foregoing petition on appeal is denied, and the claim therein made is disallowed, on the ground that no appeal lies from an order or decree allowing costs only. Henry H. Swan, District Judge Presiding." Thereupon this application for a mandamus to compel the allowance of the appeal so prayed and denied was made, and a rule made to show cause entered at a former day of this term. To this a full answer has been filed, setting out more fully the proceedings in the old foreclosure suit, and somewhat broadening the grounds upon which the appeal was denied.

George E. Tegart, for petitioner.

Walter S. Harsha, in pro. per.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

LURTON, Circuit Judge, after making the foregoing statement of the case, delivered the opinion of the court.

The appeal in this case should have been allowed. It may be that the Michigan Central Railroad Company was not originally a party to the foreclosure suit of the Farmers' Loan & Trust Company against the Detroit & Bay City Railroad Company. That it subsequently became a party by intervention for the purpose of obtaining relief in respect of a part of the purchase price of the railroad sold under the decree in that cause is undeniable. Under that intervention the petitioner made the bond and gave the collateral security out of which has grown the clerk's claim for the compensation adjudged by the decree complained of. The proceeding thus grafted upon the old foreclosure suit constituted a properly related ancillary suit, the parties to which were the petitioner and the Farmers' Loan & Trust Company. In the course of the execution of the orders and decrees made in that intervention the clerk of the court claimed to have been entitled to certain costs and commissions, which he asserted by his own subintervention, and to which he made the petitioner a party. It is therefore not the case of an effort to appeal from a decree by a stranger whose application to intervene had been denied, as in Ex parte Cutting, 94 U. S. 14, 24 L. Ed. 49, but the case of one who had become a party for the purpose of the intervention, and who had been treated as such for more than 20 years. In respect of any matter within the scope of the intervention the petitioner had thereby become an actor, with liberty to present its contention and obtain an adjudication, and a consequent right to have whatever was done reviewed by this court if the matter was one in its nature appealable. Ex parte Jordan, 94 U. S. 248, 24 L. Ed. 123; Hamlin v. Toledo, etc., R. Co., 78 Fed. 664, 24 C. C. A. 271, 36 L. R. A. 826; Williams v. Morgan, 111 U. S. 684, 699, 4 Sup. Ct. 638, 28 L. Ed. 559. Indeed, it is hard to realize how the decree for $2,710.85 against the petitioner can be of any validity whatever unless it was a party to the proceeding in which the decree was pronounced. That the decree was final, we have no doubt. It finally settles the liability of the petitioner to pay to W. S. Harsha, as clerk, the sum of $2,710.85, and directs execution to issue therefor. It was upon a matter distinct from the general subject of the litigation. Trust Co. v. Grant Locomotive Works, 135 U. S. 207, 224, 10 Sup. Ct. 736, 34 L. Ed. 97. Nothing remains to be done but to collect

and pay out the money. An affirmance here will end the matter forever. Such a decree is final, so far as to be appealable. Forgay v. Conrad, 6 How. 201, 12 L. Ed. 404; Trustees v. Greenough, 105 U. S. 527, 26 L. Ed. 1157; Farmers' Loan & Trust Co., Petitioner, 129 U. S. 206, 9 Sup. Ct. 265, 32 L. Ed. 656; Potter v. Beal, 50 Fed. 860, 2 C. C. A. 60. That in the future there may be another application for further commissions or compensation, when the petitioner shall apply for and obtain the release of its remaining securities, does not deprive the decree made of its final character. The petitioner is thereby directed to pay, not into court subject to further order, but to W. S. Harsha, as clerk, "for the services mentioned in said petition, the full sum of $2,710.85, as prayed, and that said petitioner, W. S. Harsha, have execution therefor." When this decree is executed, it is a complete end of the whole claim for commissions or compensation, so far as same had accrued and was presented by the intervention of Harsha.

But it is said that the decree was for costs only, and, as such, is not independently appealable at all. This is the ground upon which the court below really denied the appeal, though other reasons have been since advanced. The clerk's claim, as presented by his petition, was plainly and distinctly planted upon section 828, Rev. St. U. S. [U. S. Comp. St. 1901, p. 635], which, among other fees, provides that a clerk may receive, "for receiving, keeping and paying out money, in pursuance of any statute or order of court, one per centum on the amount so received, kept and paid." For special services growing out of his execution of the order requiring a delivery of 266 of the registered bonds of the company to the company, he claimed an allowance of $50. This latter was admitted as a reasonable compensation. For the service claimed to have been rendered in "receiving, keeping and paying out" of $266,000 of money arising from the original foreclosure sale, the clerk claimed a commission of 1 per cent., or $2,660. To this claim as advanced by the petition the Michigan Central Railroad Company was required by a rule to show cause why the prayer of the petition should not be granted. The railroad company appeared and demurred to this claim of $2,660. The demurrer was overruled. The railroad company, pleading no further, was thereupon decreed to pay, "for the services mentioned in the petition the full sum of $2,710.85, as prayed, and that said petitioner have execution therefor." The petition and demurrer presented the question as to whether Harsha, as clerk, had ever had any such custody, control, or management of the proceeds arising from the foreclosure sale made by special master, Addison Mandell, as to entitle him to the commission allowed by section 828. It involved, also, the question of what constitutes a "receiving, keeping and paying out of money," within the meaning of sections 828, 995, Rev. St. [U. S. Comp. St. 1901, pp. 635, 711]. There has been some diversity of opinion as to whether, under section 828, a clerk was entitled to the commission of 1 per cent. unless he had had the responsibility growing out of the actual "receiving, keeping and paying out of money," while in other cases it has been held that whenever the money became subject to the order of the court the clerk's commissions attached, although he had neither actually received, kept, or paid out any part of it. Upton v.

Treblecock, 4 Dill. 232, Fed. Cas. No. 5,541; Thomas v. Railway Co. (C. C.) 37 Fed. 548; Easton v. Houston, etc., Ry. Co. (C. C.) 44 Fed. 718; Leech v. Kay (C. C.) 4 Fed. 72; Ex parte Prescott, 2 Gall. 146, Fed. Cas. No. 11,388; Insurance Co. v. Quinn (C. C.) 69 Fed. 462; Farmers' Loan & Trust Co. v. Dart, 91 Fed. 451, 33 C. C. A. 572; Johnson v. Southern B. & L. Ass'n (C. C.) 95 Fed. 922; United States v. Kurtz, 164 U. S. 49, 53, 17 Sup. Ct. 15, 41 L. Ed. 346. In equity and in admiralty the taxation of costs, as between the parties, is a matter of sound legal discretion, and for this reason it is said that generally an appeal will not lie alone from a decree taxing costs. Canter v. Ins. Co., 3 Pet. 306, 317, 7 L. Ed. 688; U. S. v. Brig Malik Adhel, 2 How. 209, 237, 11 L. Ed. 239; Elastic Fabric Co. v. Smith, 100 U. S. 110, 25 L. Ed. 547; Dubois v. Kirk, 158 U. S. 58, 67, 15 Sup. Ct. 729, 39 L. Ed. 895; Kittredge v. Race et al., 92 U. S. 116, 120, 23 L. Ed. 488; Paper Bag Cases, 105 U. S. 766, 772, 26 L. Ed. 959; Gamewell Fire Alarm Tel. Co. v. Municipal Signal Co., 77 Fed. 490, 23 C. C. A. 250. But if the appeal be also upon the merits, the court, having the whole decree before it, may also consider the action of the court in this respect, upon a proper assignment of errors. The Scotland, 118 U. S. 507, 519, 6 Sup. Ct. 1174, 30 L. Ed. 153; City Bank, etc., v. Hunter, 152 U. S. 512, 515, 14 Sup. Ct. 675, 38 L. Ed. 534; Citizens' Bank v. Cannon, 164 U. S. 311, 323, 17 Sup. Ct. 89, 41 L. Ed. 451; Campbell Printing Press Co. v. Duplex Printing Press Co., 101 Fed. 282, 41 C. C. A. 351; The Kissinger Co. v. The Bradford Co. (decided at present session) 123 Fed. 91. In Wood v. Weimer, 104 U. S. 786, 792, 26 L. Ed. 779, there is a dictum that no writ of error lies as to cost alone. But in that case it was said, "But there are other questions, and this may therefore properly be taken up." But in all the cases cited, except that of Wood v. Weimer, supra, the taxation was between the parties in either admiralty or equity causes, and the only question was as to the exercise of a sound discretion in the disposition of the costs as between the parties. The ground upon which the right of appeal was denied was because the question was not one of positive law, but of discretion. The case of Bank of the United States v. Green, 6 Pet. 25, 8 L. Ed. 307, did present a question of the construction of an Ohio statute in respect of the marshal's poundage tax. But that case arose upon a certificate of division under section 6 of the judiciary act of 1802 (2 Stat. 159, c. 31), which the court said did not involve any matter "arising at the trial of the cause, but was upon a mere matter arising upon the service of the execution by the marshal, and was a mere question for the Circuit Court upon a collateral contest between the marshal and the bank as to his right to fees. It was not, therefore, a case within the purview of the judiciary act of 1802." But the decree from which an appeal was denied, here under consideration, did not involve any question of taxation of costs as between parties. The clerk claimed that under the chapter settling fees he was entitled, as a matter of positive law, to a fixed commission. The demurrer challenged the interpretation of section 828 insisted upon, and denied that the clerk was entitled to any commissions as provided by that section. Upon this point the demurrer was overruled, and a decree pronounced allowing

the commissions claimed. It would be most extraordinary if such a question was not subject to review, for it would place the construction of the statute settling costs and fees entirely within the arbitrary control of each court to whom the question was presented.

The appellate jurisdiction of this court, under the sixth section of the act of 1891, is very broad, and we see nothing in any of the decided cases to justify us in holding that an appeal will not lie when the decree complained of involves the construction and application of a positive statute involving the allowance of any costs at all. If the provision of section 828 applied, the court had no discretion as to the compensation to be allowed. If it did not apply, when properly construed, to the facts of the case, it was error of law to hold that it did control, and to allow compensation according to its terms. That the decree was final and appealable, we entertain no doubt. Trustees v. Greenough, 105 U. S. 527, 26 L. Ed. 1157; Williams v. Morgan, 111 U. S. 684, 699, 4 Sup. Ct. 638, 28 L. Ed. 559; The City of Augusta, 80 Fed. 297, 25 C. C. A. 430; Farmers' Loan & Trust Co. v. Dart, 91 Fed. 451, 33 C. C. A. 572.

Finally it is sought to justify the denial of the appeal prayed upon the ground that the allowance made was not the commission provided by section 828 for receiving, keeping, and paying out money, but a mere equitable compensation for the extraordinary services rendered by the clerk, and for which no special allowance is provided by the statute. It is immaterial for the purposes of this application whether the decree made against the Michigan Central Railroad Company was based upon the claim as presented by the pleading to which it demurred, or was an allowance upon grounds outside of the case made by the petition, in the nature of a quantum meruit for extraordinary services rendered under an order of the court, and for which no fee is provided by the statute. The decree making the allowance, whether based upon the terms of section 828 or otherwise, was an appealable order.

The power of the chancellor to fix an allowance out of a fund in court for the services of a special master, receiver, counsel, trustee, etc., is not uncontrollable, as it would be if orders making such allowances were not subject to review. In such matters great latitude may be properly accorded to the judge administering a property, and acquainted with the services and qualifications of persons rendering special services under the court's direction. Nevertheless, if wrong principles be applied in settling such compensation, or an allowance grossly excessive be made, it would be competent for an appellate court to correct the wrong. The most extravagant allowances in such cases, and the grossest misapplication of correct legal principles, might go unchallenged unless the matter was subject to review by appeal. Trustees v. Greenough, 105 U. S. 527, 528, 26 L. Ed. 1157; Williams v. Morgan, 111 U. S. 684, 4 Sup. Ct. 638, 28 L. Ed. 559; Mason v. Pewabic Mining Co., 153 U. S. 361, 14 Sup. Ct. 847, 38 L. Ed. 745.

That the allowance in this instance was to the clerk does not distinguish the appealable character of the order from one making a similar allowance to any other person acting under the court's order, such as a special commissioner, master, receiver, or trustee.

Nor is it essential to the right of appeal that the allowance shall be made from a fund in court. If there is no fund, and the court undertakes to provide one by pronouncing a decree against one of the parties to the proceeding, and directs execution to issue, every reason exists for allowing a review which could possibly exist when an allowance is made out of a fund in which the appealing party has only an interest.

The conclusion we reach is that the appeal prayed was wrongfully denied. It is accordingly ordered that a writ of mandamus issue, commanding the respondent to allow the appeal as of the day when it was denied.