## WELSBACH LIGHT CO. v. CREMO INCANDESCENT LIGHT CO.

(Circuit Court, S. D. New York.    March 9, 1906.)

**1. PATENTS—CONSTRUCTION OF CLAIMS—CHANGES IN PATENT OFFICE.**

The claims of a patent as allowed must be construed with reference to the action of the Patent Office thereon as the prior art; they are not affected by a mere change in the wording at the instance of the Patent Office which leaves the substance unchanged, but, if narrowed in scope, and so accepted by the applicant, he is bound thereby.

[Ed. Note.—For cases in point, see vol. 38, Cent. Dig. Patents, §§ 243½, 244.]

**2. SAME—INFRINGEMENT—LAMP APPLIANCE.**

The Heald patent, No. 423,317, for an appliance for use with incandescent gas lamps, cannot be construed to cover, as a part of the invention, the removable tubular support for the lower end of the mantle and the supporting rod, which was old, and a claim therefor rejected by the Patent Office, but is limited to the feature of the refractory ring support at the top of the mantle. As so limited, *held* not infringed.

In Equity. On final hearing.

Thomas W. Bakewell, Thomas B. Kerr, and Hillary C. Messimer, for complainant.

Louis Hicks, for defendant.

HAZEL, District Judge. The bill in this action was filed to restrain the alleged infringement of letters patent No. 423,317, dated March 11, 1890, to Arthur Heald, and to recover profits and damages for past infringement. The patent now owned by complainant relates to improvements in appliances for use with incandescent gas lamps. The answer denies infringement, and alleges anticipation by various prior patents granted in this country and in England. The object of the inventor was to remove certain deficiencies existing in incandescent gas mantles which particularly relate to what is commonly known as the Welsbach type. This type of gas mantle is tapered or conical in form and is a product of oxides of refractory earths. It is manufactured by saturating a textile fabric with a solution of chemical salts of rare earths and then incinerating the mantle. The resultant of the process is a netlike structure which on account of its fragility requires further fluidal treatment to harden the material. Upon this being done, and when properly protected from shocks or jars, the mantle can be handled or transported safely. When a mantle comes in contact with the flame of a lamp the hardening fluid is burned off, leaving the refractory brittle material intact and capable of emitting a brilliant light. It is necessary to sew to the mantle at the upper end a piece of Brussels netting, which being turned backward over the edge leaves a varying thickness extending downward from the apex about 1⅜ inches. In this situation the mantle is saturated with lighting fluid and a platinum wire is threaded through the hem and upon being drawn taut leaves a small opening. The ends of the platinum wire are thereupon fastened to the steel ring portion of a perpendicular rod, which is attached by a set screw to the shell or ledge of the burner or lamp. Such, briefly, was the state of the art in relation to the mantle at the date of the invention in suit. It will be noted that the incandescent mantle after it was in condition to suspend over the gas burner was adjusted by means of a rigid vertical steel rod, which was firmly attached to the gallery or ledge of the lamp. At its lower end the rod was kept in place by a set screw connecting it with the gallery through a hole in the boss, while at the top end it was suspended over the burner by fastening the platinum wire to the ring in the rod. According to the patentee, the method just described involved disadvantages which he designed to overcome. The patent has three claims; the first and second alleged to be involved read as follows:

"(1) In an appliance for use with gas lamps to produce light by incandescence, the combination, with a tubular mantle of the kind herein referred to, of a lower support constructed to be removably attached to a part of a lamp and to carry the lower end of said mantle, a rod carried by said lower support and external to said mantle, and a ring of refractory material carried by said rod, and to which the upper end of said mantle is secured, substantially as herein described.

"(2) In an appliance for use with gas lamps to produce light by incandescence, the combination of a tubular support capable of being applied to and removed from a burner, a holding device carried by said tube or equivalent, a rod firmly held by said holding device, a support carried by said rod, and a mantle having its lower end fitted to said tube, and its upper end directly attached to said support, substantially as herein described."

The patentee claims that he has made a step forward in the art by altering the form of the mantle support and tubular support and thus enabling an accurate adjustment of the mantle over the flame or burner and also obviating the necessity of reinforcing and threading. He asserts that by simply lifting the tube or slip with the attached portions, i.e., the rod and mantle, styled the "cap and carrier," he can readily remove the mantle from its position over the burner and replace it by another. Stress is laid upon the assertions that great care was necessarily exercised to properly adjust and align the mantle of the Bunson burner, that a customer frequently could not attach the mantle to the lamp, and that an employé of the vendor usually was sent to the house of the consumer to make the installation. Such claimed difficulties of handling and adjusting the mantle are denied by the defendant. That the mantle is mounted at the factory so as to secure accurate adjustment over the gas burner is undeniable. Indeed, there is evidence by defendant's witness Berlinecke to the effect that the sale of mantles that were unaccompanied by a tube was abandoned "because the other could be made better, and was easier to put on." Certainly, it was necessary properly to center the mantle at a certain height to obtain the best results. Evidence was given to show that before the patent in suit the mantle was removed from the burner by loosing the set screw and pulling out the rod from the boss, and to replace another required inserting the lower end of the rod in the boss; but this is an immaterial point in view of what is plainly stated in anterior patents. There was earnest disputation at the hearing in relation to the scope of the claims, as to whether or not they included the tubular support for the mantle at its lower end. Complainant contends that the invention is not only for the manner of supporting or suspending the mantle from a refractory ring at the top, but also for a removable support attached to the burner of the lamp and to the rod. As heretofore explained, the lower support consists of the tubular ring which fits the burner and, together with the rod and mantle, comprises the so-called cap and carrier. The claims are for a combination of old and separately well-known elements, together with new elements. In view of the action of the Patent Office limiting the claims, as hereinafter stated, the new elements are not at first reading of the patent apparent with reasonable certainty. It is a rule of patent law that a claim as allowed in order to ascertain the real invention must be interpreted with reference to the action of the Patent Office and the antecedent art. If the simple wording of the claims was changed by the patentee at the request of the commissioner of patents, leaving the substance of the claims unchanged; that is, allowing the language employed to cover the invention as originally asserted by the inventor, a meritorious patent, one that has progressed the art, should not be destroyed. Hubbell v. United States, 179 U. S. 80,

21 Sup. Ct. 24, 45 L. Ed. 95; Leggett v. Avery, 101 U. S. 256, 25 L. Ed. 865; Campbell Printing P. Co. v. Duplex Co., 101 Fed. 282–295, 41 C. C. A. 351; Walker on Patents, § 187. In Shepard v. Carrigan, 116 U. S. 593, 6 Sup. Ct. 493, 29 L. Ed. 723, the Supreme Court says:

"If an applicant, in order to get his patent, accepts one with a narrower claim than that contained in his original application, he is bound by it. If dissatisfied with the decision rejecting his application, he should pursue his remedy by appeal."

It is important to know whether this principle is applicable to the facts here. The file wrapper and contents show that when the application was filed it contained seven claims, evidently, in the judgment of the examiner, describing old elements, for such claims were twice rejected on the ground that they lacked novelty. The examiner cited as to claim 1, the patents to Requa, No. 266,889; Lungren, No. 336,576; and Lungren, No. 365,832. Claim 2 was also rejected on the patent to Lungren, No. 336,576. Claims 3, 4, and 5 were rejected on the patent to Fahnehjelm, No. 332,650, and on the British patent, No. 5,354 of 1887. Later, the application was amended by substituting narrower claims. The amended claim which was for a tubular support for the mantle, "constructed to be removably attached to a part of the lamp," was again rejected on British patent, No. 7,990 of 1887, to Imray. There was an allowance of the patent when the inventor added to the first claim the limiting feature of the refractory ring support at the top of the mantle. The second claim in suit is not thought to cover more than the first, excepting that it more clearly indicates that the clay ring described in the specification shall be attached directly to the mantle. Upon reference to the specification in relation to the manner of attaching the mantle to the ring, it would seem reasonably certain that by the words, "directly attached," the patentee meant to be understood as claiming a method without sewing the Brussels net, and threading the hem with platinum wire. In the beginning, the inventor claimed the tubular support, but he acquiesced in the rejection of this feature on reference by the patent office to the Imray structure. The Patent Office manifestly did not intend to cover any other mantle support than a ring of clay or other suitable material, sufficiently large to allow the mantle to be drawn through it so that it might be turned over at the top edge, and thus avoid the necessity of sewing on the netting and threading with platinum wire the reinforced portion. That being done, the specification says, "the cotton mantle is then incinerated and the finished mantle remains fixed on the ring." Concededly, this element was a departure from the prior art. The essence of neither of the involved claims considering the limitations of the Patent Office can be construed to include the removable tubular support at the lower end. The principle of the adjudications referred to are thought applicable to this case. This conclusion finds support in the evidence. It is shown that the gas, mantle, a vertical rod with a ring or hook at the upper end, and a cover for the burner were old at the date of the invention in suit. But such fact, standing alone, is immaterial, as that can be said of other com-

bination claims. The question of infringement depends upon the breadth of the claims in suit, and what was included by them. In the patents to Bell, Nos. 390,056, 390,057, and 408,072, and to Mactear, No. 378,699, combinations of the elements just mentioned are unquestionably shown. True, the details of the structures are different from the Heald invention; for instance, the vertical rod is attached to the gallery of the lamp by a set screw, and the tubular supports are not removed with the mantle. As already stated, the mantle in prior structures was turned over at the upper end and threaded with a platinum wire or asbestos. In the British patent of Von Buch, No. 1,235 of 1886, is shown a supporting ring or loop at the top of the mantle and an asbestos ring. Aside from what is shown by prior patents, the Imray English patent involved the feature of the removable support attached to the rod at the lower end of the mantle as in the Heald patent. In Figs. 3 and 4 of the drawings of the Imray patent is shown a support functionally like that of complainant's. The general character of the structure considered in connection with the drawings indicates with reasonable clearness that the lower tubular support is easily removed from the burner. Furthermore, the mantle is suspended or supported at the top from the center of a curved rod and extends downwards within the upper edge of the tube, not on the outside thereof as in the Heald patent. In relation to the flame the mantle is adjustable in practically the same manner as the Heald device and can easily be put over the burner by the consumer. There was, therefore, no invention, in my opinion, in constructing a tubular support for the mantle attached at the lower end to a perpendicular rod so as to enable removing the cap and carrier, no new result being accomplished. The feature of extending the mantle below the tube is also old, it being shown in defendant's exhibits gas burners Nos. 1, 2, and 5, and also in the patents of Bell, to which attention has been directed. Reference was made, on the oral argument of this case and in the brief submitted by complainant, that the patent to Imray does not sufficiently describe the invention and being a foreign patent, upon the authority of Seymour v. Osborne, 11 Wall. 516, 20 L. Ed. 33, cannot anticipate the invention in suit. The rule there announced, however, does not apply. The drawings accompanying the specification show the tubular support in combination with the rod and mantle with sufficient clearness. Does the method by which the mantle support of the defendant is suspended infringe the claims in suit? The defendant's mantle in appearance is much like that of Heald. In the process of manufacture, however, the top of the mantle is threaded with asbestos similarly as it was with the platinum wire of the prior art. The elicited facts show that the mantle of the defendant is immersed in the lighting fluid and then in the "fixing" bath, and when dry, it is turned over at the upper end; the asbestos being threaded through the hem. The ends of the asbestos are then fastened to a ring portion of the rod, or are fastened in a loop to a double wire support from which the incandescent mantle is hung. It will be observed that defendant's structure has no clay ring attached directly to the vertical rod and the mantle. The asbestos thread cannot be

regarded as the equivalent of the refractory ring arrangement described in the Heald patent, inasmuch as such feature was old. Upon this point, as already intimated, the Von Buch patent says that "rings of wire, of platinum, irridium, asbestos, or other refractory material, are useful to sew or thread incandescent mantles. The practicability of such use cannot safely be disputed. The foregoing reasons constrain me to hold that the claims in suit are entitled to a narrow construction and that infringement by the defendant is not established. by the proofs.

The bill is dismissed, with costs.