ABBOTT MACHINE Co. *v.* BONN *et al.*

(*Circuit Court, N. D. Illinois.* May 2, 1892.)

PATENTS FOR INVENTIONS—CHECK PROTECTOR—PATENTABLE INVENTION.

The fourth and fifth claims of letters patent No. 401,871, issued April 23, 1889, to Edwin O. Abbott, for a device for cutting figures or letters in bank checks, which claims are for the combination of a stationary feed roll, a rotatable shaft, fixed at one end and movable at the other, and a lever to move the shaft, are void for want of invention, since the only difference between that and prior machines is that the lower roller, instead of the upper one, is made movable.

In Equity. Bill by the Abbott Machine Company against Robert H. Bonn and others for injunction and accounting.

*Charles H. Roberts,* for complainant.

*McClellan, Cummins & Moulton,* for defendants.

BLODGETT, District Judge. This is a bill in equity, charging defendant with the infringement of patent No. 401,871, granted April 23, 1889, to Edwin O. Abbott, for a "check protector." The patent in question shows a device for cutting or punching letters, figures, or signs into paper, and its main use is for so cutting or perforating into bank checks or drafts the figures denoting the amount for which the check or draft is drawn, thereby giving an additional security against an alteration of the check. Infringement is charged of the fourth and fifth claims of the patent, which cover the feeding mechanism of the machine. These claims are:

"(4) In a feeding device for a check protector, the combination of a stationary feed roll and rotatable shaft, fixed at one end and movable at the opposite end, a feed roll mounted on the movable end of the shaft, and a lever engag-

ing with the shaft for moving it to carry the feed rolls from contact, substantially as described.   (5) In a feeding device for a check protector, the combination of a stationary feed roll, a rotatable shaft, mounted at one end in fixed bearings, a feed roll mounted upon the opposite end of the shaft, a lever carrying the latter end of the shaft, whereby to move it to carry its feed roll from the stationary feed roll, and a spring for normally holding the feed rolls in contact, substantially as described."

It appears from the proofs that, in order to make a device of this kind serve the purpose for which it is intended, it is highly desirable to obtain a correct alignment and spacing of the signs and figures cut or perforated into the check or draft.   It is also necessary that the line of signs or figures denoting the amount shall be parallel with the written or printed matter of the check, and hence the machine must have an endwise feed, and the parts must be so arranged as that the check to be operated on can be inserted sideways into the machine at about the point where the figures are to be cut; or, in other words, directly under the cutting or perforating mechanism.   Both the complainant's and the defendants' machines have a platen, or metal plate, the width of which is about that of the length of an ordinary bank check, and the check to be operated on is laid upon this platen, and then pushed sideways, until it is brought properly under the cutting mechanism.   The feed is obtained by two friction rollers, which are so near in contact as to firmly hold the check between them, so that, by rotating the lower of these rollers, the check is moved or fed lengthwise, and an intermittent motion is imparted to this lower roller by means of a lever and pawl acting upon the shaft which carries them.   This lower roller is movable on its shaft beneath the platen, and a portion of the platen is cut away, so as to allow the upper surface of the roller to extend slightly above the upper surface of the platen, when it is rotated to move the check.   It is plain, therefore, that the end of this lower roller which reaches above the surface of the platen will interfere to some extent with the sideways movement of the check when the operator attempts to push it into place under the cutters, and to obviate this difficulty the end of the shaft which carries the lower roller is attached to a lever, which has a slight movement up and down, this movement being controlled by a spring so arranged as to hold the roller in operating position,—that is, in contact, or nearly so, with the upper roller,—but which admits of depressing the lower roller so that its entire upper surface will be below the upper surface of the platen, whereby the operator can, when he wishes to insert the check, depress the lower roller entirely out of the way of the sidewise movement of the check, and when the check is in place to be operated upon, the constraint being removed from the spring, the roller resumes its position slightly above the platen, where the check is held firmly between the upper and lower rollers, and moved endwise intermittently to be acted upon by the punches or cutters by the intermittent revolution of the lower roller.

The contention of the case is whether it was patentable to make this lower feed roller movable, so that it could be depressed below the platen,

while the operator was inserting the check, and then allowed to return to its place in close contact with the upper roller, so that the check would be held between them; the defendant contending that it was old, at the time of this patent, to hang or adjust a roller friction wheel or pinion so that it could be swung into or out of its working position or engagement. It appears from the proof that the device of two rollers arranged to hold the check between them and feed it forward by the intermittent revolving of one, in a check protector, was old at the date of this patent. Also that it was old to separate the rollers so as to allow the check to be inserted sideways between them. All this is shown in the German machine in evidence, the movable function being given to the upper or idle roller; and all that this patentee has done is to make the lower roller movable instead of the upper one. The question, then, is, was it novel to make a lower roller movable, so that it could be dropped below the upper surface of the platen by hanging the shaft which carried the roller in a movable bearing? From the testimony in the case, I am satisfied that it was an old and well-known mechanical device to so arrange the bearing of a wheel, pinion, or roller that it could be moved into or out of working engagement, which is what this patentee did with this lower roller, and what was done with the upper roller of the German machine. This is shown in the Peterson machine and the Curtis machine, models of which are in evidence. These were machines for planing or dressing lumber, and a feed wheel or roller was so arranged as to be movable in its bearings, whereby it accommodated itself to the thickness of the board to be operated on. With proof showing a feed for a check protector where the upper roller was movable vertically to admit of the insertion of the check between the rollers, and proof showing actuated rollers in other classes of machinery capable of being moved into or out of working position by mounting the roller shaft or axle on a movable lever or beam, I can see no invention in so changing the old structure of check protectors as to allow the separation of the surfaces of the two feed rollers by hanging the lower or acting roller on a movable bearing, instead of leaving the function of moving in the upper roller. The upper roller, in order to be movable, must be set in some form of movable bearing, and to change this quality of movability from the upper to the lower roller did not involve invention. What Mr. Abbott was seeking to do was to secure a clear, open space between these two feed rollers, into which the check could be pushed by a sideways movement along the surface of the platen, where it could be kept smooth and straight, and he did this by setting his lower roller on a bearing which could be so depressed as to carry the roller below the upper surface of the platen. With planing and molding machines, having pressure rollers so adjusted that one could rise or fall to meet the inequalities of the lumber to be operated upon, so well-known in the art, and a check protector with a movable upper roller, I do not see how any inventive genius is called into action to bring the movable rollers from those machines into this machine. The inventor found this old pressure roller not performing the exact function of his feed roller, but so nearly analogous as

to suggest its adaptability, without essential change, to his purpose; and it seems to me he merely appropriated it to a new use by putting it into a combination where it simply performs its old function, although it operates on a different material for a different result. The machine of the defendant in this case, while it is a check protector like the complainant's, does its work in a different way, and I see no reason why the inventor or patentee of defendants' machine had not the same right to go to the old art and select a movable bearing for one of his feed rollers as the patentee in this case had. What I mean is that as it was old, as shown by the proof, to make check protectors with a movable upper feed roller, there is no invention in making such a machine with a movable lower feed roller; and a claim for such lower feed roller, in combination with other parts of the mechanism, is not for a new and patentable combination, although it may make a more convenient machine. For these reasons I am of opinion that so much of the complainant's device as is covered by claims 4 and 5 is not novel, and the bill will be dismissed for want of equity.