Madden, Judge,
delivered the opinon of the court:
The plaintiff sues the Government, under a special Act of Congress which is quoted in finding 1, for use of his two patents, one of which was a patent on apparatus, the other a patent on method. The special act had the effect of giving the plantiff the right to sue under the Act of July 1, 1918, 40 Stat. 704, 705, notwithstanding the lapse of time or the statute of limitations, which, but for the special act, would have barred the suit. The 1918 act provides:
* * * That whenever an invention described in and covered by a patent of the United States shall hereafter be used or manufactured by or for the United States without license of the owner thereof or lawful right to use or manufacture the same, such owner’s remedy shall be by suit against the United States in the Court of Claims for the recovery of his reasonable and entire compensation for such use and manufacture: * H* *
The plaintiff claims that the Government at its Picatinny Arsenal, used his patented apparatus and method in loading shells, and that four different contractors who loaded shells for the Government under contracts, also used the plaintiff’s patented apparatus and method. The Government asserts several defenses, including the invalidity of the patents for' lack of invention, which defense we will first consider.
The uses made by the Government or its contractors were, as we have said, in connection with the loading of shells. The devices claimed to be infringements were used to drill holes in T. N. T. or similar high explosive fillings of shells, which had been poured into the shell casings in a molten *443 state, and had there hardened. It was necessary to drill a hole in the explosive in each shell, to make a place for the insertion of the booster or detonator. The hole for the detonator was of a smaller diameter than that of the threaded opening in the shell casing, into which opening the detonator casing would be screwed. It was economical, therefore, to use for the drilling a bit or drill having two diameters, a small one and, farther back on the bit, a larger one, big enough to make the larger recess necessary for the threaded portion of the detonator casing. It was necessary that the shell casing with the hardened explosive in it, be held firmly in place while being drilled; that the drill be in alinement with the center of the shell, and that the drill be stopped when it had penetrated to the desired depth, i. e., when the small and large diameters of the hole were deep enough to receive the detonator and its enlarged threaded portion. For efficient fragmentation of the shell when it was detonated, and to prevent premature explosions, it was necessary that the holes be accurately drilled to the sizes of the parts to be inserted in them.
The plaintiff’s apparatus patent No. 1,238,362, described in findings 14,15, and 16, makes no mention in its claims that it is for drilling holes in explosives. It speaks merely of “stock” as the subject to be drilled. The broadest claim, of those asserted in this suit, is claim No. 6. It reads as follows:
Boring apparatus comprising a boring tool, means for reciprocating the boring tool along a fixed path, a guide having an opening in alinement with said path for laterally positioning the stock and means for at .least partially supporting the stock and for positioning the stock longitudinally of said path.
This claim, and claim 7, which is almost identical, were anticipated by the patent to Goell, discussed in finding 41 issued as far back as 1841 and which was, significantly, a machine for boring a hole in the explosive composition contained in “war-rockets.” In the Goell machine the stock moved to the drill, instead of the drill moving to the stock, as in the plaintiff’s machine. That difference is of no importance, Duner Co. v. Grand Rapids R. Co., 171 Fed. 863, and other authorities there cited, as the plaintiff itself recognized when it was *444 obtaining its patent. See defendant’s Exhibit 43, pages 13, 22. The plaintiff urges that the Goell machine had no stop to halt the downward progress of the rocket holder when the drill had penetrated to the desired depth. The drawing shown in the figure reproduced in finding 41 seems to us to show a termination of the flat surfaces which serve as guides for the work holder, stopping its downward progress. We think it is not strange that no number or legend should have been appended to a device so simple and so obviously necessary.
The plaintiff’s claims 6 and 7 of its apparatus patent were also anticipated by the Gladeck drilling machine, built and used in the Government arsenal at Frankford, and discussed in finding 51.
The plaintiff’s claim 1 of its apparatus patent includes, in addition to the elements of claims 6 and 7, the requirement that “the stop * [be] threaded on the forward end of the supporting member so that it may be adjusted longitudinally of the path of reciprocation of the boring tool.” This provision for the positioning of the stock to the desired location by the turning of a threaded stop had been anticipated in 1912 by the French patent to Elwell, discussed in finding 49. A not essentially different device for the positioning of the stock is shown in United States patents to A. M. Thompson, discussed in finding 50.
As to the plaintiff’s claims based on his method patent, No. 1,255,836, our findings 56-60 express our conclusion that the claims of that patent here in issue, i. e., claims Nos. 1, 4, 8, and 10, are invalid because they were anticipated or because they lack invention. We will not repeat those conclusions here.
The Government claims that the plaintiff’s method patent is void in its entirety because of the plaintiff’s failure to file disclaimers of several claims of that patent. The relevant facts are given in findings 25 and 26. The then Court of Appeals of the District of Columbia found, in effect, that as to several of its claims, the plaintiff’s method patent had been improvidently granted, one Stillwell having been the prior inventor of the subject matter of those claims. The court’s *445 decision was in 1923. The Patent Office issued a patent to Stillwell in 1925.
The applicable statutes[2] permit a patentee in certain situations to save the good portion of his patent by a disclaimer of those parts of his patent as to which he was not the prior inventor. And the latter of the two cited sections expressly provides that the patentee may not maintain a suit on his patent “if he has unreasonably neglected or delayed to enter a disclaimer.” In the, instant case some twenty years have elapsed since the court’s decision pursuant to which a patent was issued to Stillwell covering several of the claims of the plaintiff’s method patent, and the plaintiff has filed no disclaimer, nor has he or any assignee of his brought suit under the provisions of 35 U. S. C. 66. See finding 26. For this reason, the plaintiff’s method patent is invalid as to all of its claims. Marconi Wireless Co. v. United States, 320 U. S. 1, 57.
In view of what we have said, it is not necessary to determine whether the facts disclosed by the plaintiff’s evidence should cause us to conclude that the International Steel and Ordnance Corporation had an implied license to use the plaintiff’s patents. See finding 31.
We conclude, therefore, that the claims of the plaintiff’s apparatus patent which were applicable to any of the machines used by or for the Government were invalid for lack of invention; that the claims of the plaintiff’s method patent which were applicable to any of the methods used by or for the Government were invalid for the same reason, and also for failure of the plaintiff to file a disclaimer within a reasonable time.
The petition is dismissed. It is so ordered.
Littleton, Judge; and Whaley, Chief Justice, concur.
Jones, Judge; and Whitakee, Judge, took no part in the decision of this case.